UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| EMMA G. CRAVIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 5:07-CV-222-BG |
| | ) | ECF |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## **REPORT AND RECOMMENDATION**

Plaintiff Emma G. Cravin seeks judicial review of a decision of the Commissioner of Social Security denying her applications for Disability Insurance Benefits and Supplemental Security Income. The United States District Judge transferred this case to the United States Magistrate Judge. Cravin did not consent to the jurisdiction of the court.

Pursuant to the order of transfer, the undersigned files this "Report and Recommendation." After reviewing the arguments of the parties, the administrative record, and the applicable law, this court recommends that the Commissioner's decision be reversed and Cravin's case remanded for further administrative proceedings.

## **I.     Facts**

Cravin applied for benefits on December 18, 2001, claiming she became disabled as a result of rheumatoid arthritis, anxiety, and depression. (Tr. 96.) According to the medical records, Cravin has a history of muscle spasms, rheumatoid arthritis, hypertension,

depression, anxiety, social phobia, and dependency on marijuana. (Tr. 197, 365, 377, 575, 592.) She testified that she quit attending school before the seventh grade and that she previously worked as a food server at a nursing home. (Tr. 781.) She is fifty-seven years old. (Tr. 314.)

The Administrative Law Judge (ALJ) held a hearing and issued a decision on September 20, 2004, in which he determined that Cravin was not disabled. (Tr. 611-18.) The Appeals Council vacated the ALJ's decision and remanded Cravin's case to the ALJ for resolution of a number of issues. (Tr. 622-26.) Of note, the Appeals Council found that the ALJ's decision did not provide rationale for finding that Cravin's polysubstance abuse was a material and contributing factor to disability. (Tr. 624.) The Appeals Council ordered that the ALJ was to conduct further proceedings to determine whether drug addiction and alcoholism were contributing factors material to the finding of disability. (Tr. 625.) Thereafter, the ALJ held another hearing and issued another decision. (Tr. 17-26, 778-797.) In his second decision, which is now before the court, the ALJ found that Cravin was disabled beginning on April 8, 2005, because her impairments met the criteria of Listing 12.04, the listing in the Commissioner's regulations for affective disorders. (Tr. 20.) The ALJ also acknowledged that Cravin used polysubstances prior to April 8, 2005, and determined that when she was not using polysubtances prior to April 8, 2005, her impairments were severe but that she retained the ability to perform limited sedentary work. (Tr. 19, 25.) On the other hand, he determined that when Cravin was using polysubstances prior to April 8, 2005, her impairments met the criteria of Listing 12.09, the listing for

substance addiction disorders, and that she was therefore not entitled to disability benefits. (Tr. 19.)

## II.     The Applicable Law and the Parties' Arguments

In 1996 Congress amended the Social Security Act after enactment of the Contract with America Advancement Act (CAAA). *See Parra v. Astrue*, 481 F.3d 742, 746-47 (9th Cir. 2007). The purpose of the CAAA was "'to discourage alcohol and drug abuse, or at least not to encourage it with a permanent government subsidy.'" *Id.* at 747 (quoting *Ball v. Massanari*, 254 F.3d 817, 824 (9th Cir. 2001)). The Commissioner's regulations specifically direct that if it is determined that the claimant is disabled and there is evidence of drug addiction or alcoholism, the ALJ must determine whether the claimant's drug addiction or alcoholism is a contributing factor material to the determination of disability. 20 C.F.R. § 404.1535(a) (2007). In short, the claimant is not entitled to benefits if it is determined that the claimant is disabled on account of drug addiction or alcoholism. In order to reach this determination, the ALJ must determine whether the claimant would remain disabled if he or she stopped using drugs or alcohol.[1] § 404.1535(b). If the ALJ determines that the claimant would not be disabled if he or she stopped using drugs or alcohol, the claimant's drug addiction or alcoholism will be considered a contributing factor material to the finding of disability. § 404.1535(b)(2)(i). In such a case, the claimant will not be entitled

---

[1] The evidence demonstrates that Cravin used marijuana on a daily basis for a period of time and that she drank alcohol occasionally, but the evidence does not demonstrate that she was an alcoholic. (*See* Tr. 143, 375, 668.) The regulation at issue in this case addresses the impact of "drug addiction" and "alcoholism" upon the determination of disability. *See* 20 C.F.R. § 404.1535(a) ("we must determine whether your drug addiction or alcoholism is a contributing factor . . ..") Because there is no evidence of alcoholism in the medical records, Cravin's use of alcohol is not material to this case and is not discussed.

3

to benefits. On the other hand, if the ALJ determines that the claimant's impairments would, in fact, be disabling in the absence of the claimant's drug addiction or alcoholism, the claimant's drug addiction or alcoholism will not be considered a contributing factor – it will not be considered the cause of disability – and the claimant will be entitled to benefits. § 404.1534(b)(2)(ii).

Cravin claims the ALJ failed to comply with the regulations in reaching his decision that she was not disabled prior to April 8, 2005. She points out that the ALJ is required to first determine whether the claimant is disabled by applying the five-step sequential evaluation before determining whether drug addiction or alcoholism is a contributing factor to disability but that the ALJ in her case considered the impact of her purported drug and alcohol use before he determined whether she was disabled. She contends that the ALJ's decision that she became disabled on April 8, 2005, is based on her report to consulting psychologist William E. Hoke, Ph.D., on April 8, 2005, that she was no longer using marijuana. Cravin also argues that substantial evidence does not support the ALJ's determination that polysubstance use was a contributing factor material to the finding of disability.

Pointing to *Brown v. Apfel*, 192 F.3d 492, 497-99 (5th Cir. 1999), the Commissioner argues that the burden is on the claimant to prove that his or her substance abuse is not material. The Commissioner argues that the ALJ in this case described Cravin's continuous polysubstance abuse as beginning in 1999 and lasting until she reported that she was abstinent during an examination by Dr. Hoke on April 8, 2005. (*See* Tr. 668.) The

Commissioner argues that the ALJ then correctly determined what Cravin's level of functioning would have been prior to April 8, 2005, had she not used drugs and concluded that if she had stopped using drugs she would have been capable of performing sedentary work involving incidental contact with the public.

### III. Discussion

As the Commissioner argues, the burden is on the claimant to prove that he or she would be disabled in the absence of drug or alcohol addiction. *See Brown*, 192 F.3d at 498. On the other hand, the ALJ must support his determination regarding the effect of the claimant's substance abuse with substantial evidence. *Id*. at 499; *see Sklenar v. Barnhart*, 195 F. Supp. 2d 696, 700 (W.D. Pa. 2002) (the ALJ's decision as to whether the claimant's substance use is a contributing factor material to disability must be supported by *some* medical evidence) (emphasis in the original). In this case, the ALJ was required to support with some medical evidence the conclusion that prior to April 8, 2005, had Cravin not used marijuana, she would have been capable of performing sedentary work involving incidental contact with the public. The ALJ did not do so.

According to the medical evidence, Cravin used marijuana on a daily basis in 2001; she reported that the drug helped her pain and helped increase her appetite. (Tr. 543.) She reported in 2002 that she continued to use marijuana in order to maintain her appetite and to control pain. (Tr. 374, 496.) She claimed she decreased her marijuana use in 2003 and that she stopped using the drug in 2004. (Tr. 668.)

Although the ALJ acknowledged the fact that Cravin used marijuana, he did not

5

discuss the impact Cravin's marijuana use had upon her other impairments. He did not determine which of Cravin's mental impairments might have remained had she stopped using marijuana prior to 2004 or whether those impairments would have rendered her disabled in the absence of drug use.[2] The regulations direct that the ALJ must evaluate which of the claimants' physical and mental limitations would remain if the claimant stopped using substances and then determine whether the remaining limitations would be disabling. 20 C.F.R. § 404.1535(b)(2).

Cravin's representative, on the other hand, pointed to the report Dr. Hoke provided in April 2005. (Tr. 788-89.) Dr. Hoke diagnosed Cravin with marijuana dependence as well as major depressive disorder and panic disorder. (Tr. 673.) He noted that she appeared to be experiencing significant panic attacks and that she was agoraphobic, and he indicated that she appeared to be "quite isolated, uninvolved, and frightened and [was] likely to have significant difficulty in being functionally employable." *Id*. As Cravin's representative noted, Dr. Hoke was of the opinion that Cravin would experience significant limitations whether she used drugs or not. (Tr. 673, 788.) A question on the examination form Dr. Hoke

---

[2] It should be noted that the ALJ determined that Cravin was disabled prior to April 2005 because her impairments met the criteria of Listing 12.09, the listing for substance abuse disorders. Listing 12.09 requires (1) evidence of behavioral or physical changes associated with the regular use of substances that affect the central nervous system and (2) evidence that the criteria is met for another listing, such as Listing 12.04, the listing for depressive syndrome, or Listing 12.06, the listing for anxiety disorders, or Listing 12.08, the listing for personality disorders. 20 C.F.R. part 404, subpart P, appendix 1 § 12.09. To be disabled under Listing 12.09, the claimant must therefore meet the criteria of both (1) and (2) in the listing. Because the ALJ determined that Cravin was disabled under Listing 12.09, he implicitly found that Cravin's marijuana use (criteria (1)) *together with* other impairments – *i.e.*, severe depression, anxiety, or personality disorder – (criteria (2)) rendered her disabled. The question remains whether she would have remained disabled under criteria (2) – one of the listings included in Listing 12.09 – if she stopped using drugs.

completed stated, "If you have concluded that the medical record indicates that the claimant's alcohol and/or substance abuse contributes to any limitations as set forth above, please identify and explain what changes you would make to your answers if the claimant was totally abstinent from alcohol and/or substance use/abuse." (Tr. 676.) Dr. Hoke answered, "None." *Id.* Dr. Hoke was therefore of the opinion that Cravin's mental impairments were debilitating independent of her drug use.

The medical evidence demonstrates the same. The medical evidence shows that Cravin's mental impairments were as severe when she was not using marijuana as they were when she was using the drug. According to medical evidence generated prior to April 8, 2005, the date of Dr. Hoke's examination and the date on which the ALJ determined that Cravin became disabled, Cravin experienced depression and anxiety and agoraphobia. (Tr. 376, 573.) Psychiatrists and caseworkers noted that Cravin reported that she interacted with few people; did not like to talk with people; trusted "no one"; was nervous and irritable around people; and liked to be alone. (Tr. 143, 376, 529, 561, 573.) Psychiatrist Arun Patel, M.D., noted that she experienced "poor interaction" with friends and family. (Tr. 574.) Psychiatrist Thomas O. Gore, M.D., noted in March 2002 that Cravin had "completely lost faith in people" and had "become very socially phobic" since he had last examined her in 1999. (Tr. 574; see Tr. 142-44.) Dr. Gore noted that Cravin wept spontaneously throughout both interviews and that "her thought processes were disorganized, secondary to anxiety." (Tr. 144, 376.) She was noted to suffer from severe depression, anxiety, mood disorder, and personality disorder and was assigned a Global Assessment of Functioning Score

7

(GAF Score) of 50. (Tr. 144, 377, 575.) A GAF Score is an assessment of an individual's psychological, social, and occupational functioning based on a hypothetical continuum of mental health and mental illness. AMERICAN PSYCHIATRIC ASS'N DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS at 34 (4th ed. 2000) (DSM-IV). An individual assigned a GAF score of 50 would be expected to experience serious to major impairments in social and occupational functioning. *Id.* Dr. Gore specifically noted that Cravin suffered from "severe occupational and social impairment" and that her prognosis was poor. (Tr. 144, 377.)

On April 8, 2005, the date on which the ALJ determined Cravin's disability began, Dr. Hoke examined Cravin and diagnosed major depression and panic disorder with agoraphobia. (Tr. 668-74.) As noted, Cravin reported to Dr. Hoke that she had not used marijuana since 2004. (Tr. 688.) She nonetheless reported the same symptoms she reported during the time she was using marijuana, and Dr. Hoke's diagnoses and examination notes do not differ from those made by Drs. Gore and Patel during the time Cravin was using marijuana. Cravin reported to Dr. Hoke that she felt very isolated and that she was depressed. (Tr. 670.) She reported experiencing panic attacks when she was around people and told Dr. Hoke that she was "very afraid of people and what they would make her do." *Id.* As Dr. Gore previously noted in his examination notes, Dr. Hoke noted in his own examination notes that Cravin was "teary throughout much of the interview" and that she reported significant feelings of worthlessness, hopelessness, and helplessness related to interacting with people. (Tr. 670-71.) As Dr. Gore had done, Dr. Hoke assigned Cravin a

GAF of 50 and a "limited" long-term prognosis. (Tr. 674; *compare* Tr. 144, 377.)

The ALJ was required to consider which of Cravin's impairments would have remained prior to the time he found her to be disabled had she stopped using marijuana and whether those impairments would have rendered her disabled in the absence of drug use. 20 C.F.R. § 404.1535(b)(2). The ALJ did not undertake this analysis. He merely stated, without citing any medical evidence, that Cravin's polysubstance abuse was a contributing factor to her disability before she stopped using drugs. In fact, there is no medical evidence to support the ALJ's decision. None of Cravin's doctors expressed an opinion as to what Cravin's mental condition would be had she not used marijuana and none of her doctors expressed an opinion as to whether her use of marijuana caused or intensified her mental impairments. *Compare Brown*, 192 F.3d at 499 (finding "not a shred of evidence in the record" that would show whether the claimant's disabling depression would subside if she stopped consuming drugs and alcohol). On the other hand, Cravin pointed to evidence during the administrative hearing, which the ALJ did not acknowledge, that demonstrates that her mental impairments would have been disabling regardless of whether she used drugs or not.

The court is charged with determining whether the Commissioner's denial of disability benefits is supported by substantial evidence and whether proper legal standards were used to evaluate the evidence. *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002) (citing *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999)). The decision in this case was not reached through the correct application of legal standards and is not supported by substantial

9

evidence. The court must set aside findings which are not supported by substantial evidence and must correct errors of law. *Dellolio v. Heckler*, 705 F.2d 123, 125 (5th Cir. 1983) (citation omitted).

## IV. **Recommendation**

Based on the foregoing discussion of the issues, evidence and the law, this court recommends that the United States District Court reverse the Commissioner's decision and remand Cravin's case for further administrative proceedings.

## V. **Right to Object**

Pursuant to 28 U.S.C. § 636(b)(1), any party has the right to serve and file written objections to the Report and Recommendation within ten days after being served with a copy of this document. The filing of objections is necessary to obtain de novo review by the United States District Court. A party's failure to file written objections within ten days shall bar such a party, except upon grounds of plain error, from attacking on appeal the factual

findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc).

    Dated:     July 1, 2008.

                                                   NANCY M. KOENIG
                                                   United States Magistrate Judge